## MATTESON VS. SCOFIELD.

CONTRACT—SPECIFIC PERFORMANCE: (1, 2.) *Proposition to sell land; offer and acceptance by letter; offer construed; effect of further proposals as to place of payment, etc.*
JUDGMENT: (3.) *Power of court of equity to pass title to land by its judgment.* (4.) *Effect of requiring clerk of court to determine certain facts.*

1. Defendant offered by letter to sell certain land for $3,200, viz., $1,000 down and $500 annually, with interest, until the whole was paid, the amount unpaid to be "secured by a mortgage." *Held,*
   (1.) That upon its face this must be held to mean that the land was to be conveyed to the purchaser, and he was to mortgage it back for the unpaid purchase money.
   (2.) That upon plaintiff's unconditional acceptance of this offer (by letter), there was a valid agreement, which equity will specifically enforce.
2. Where the letter of acceptance proposed (but not as a condition of the acceptance) to transact the business through a bank in H. (near plaintiff's residence), and defendant, in reply, waving his right to have the money paid him at his own place of residence, offered to come out to H. and transact the business in person, this does not vary the terms of the contract, nor affect the plaintiff's right to a specific performance.
3. Even if a court of equity has not inherent power to pass title to land within its jurisdiction, by its judgment alone (without any conveyance), yet by sec. 15, ch. 129, R. S., it may pass title in that manner when essential to the complete exercise of its jurisdiction; as where defendant, though personally served, being a non-resident and no longer found in this state, cannot be compelled to convey.
4. Where the entry of such a judgment is made dependent on plaintiff's depositing with the clerk of the court a specified sum of money and "such other sums as are now due to defendant by the terms of the agreement, and his notes and mortgage for such sums as are not due," defendant, on appeal from the judgment, cannot object that the clerk is charged with the determination of questions which should be determined by the court, unless it appears that he is injured by what the clerk has done.

APPEAL from the Circuit Court for *St. Croix* County.

Action to compel a specific performance of a contract to sell and convey land.

On the 1st of December, 1867, defendant was the owner in fee of the northeast quarter of S. 5, T. 28 N., R. 19 W., in said county. He was then, and continued to the trial of this action to be, an unmarried man, and residing in the state of Connecticut. On

the 29th of January, 1868, at Darien, in said state of Connecticut, he mailed the following letter, directed to the plaintiff at Hudson, Wisconsin: "Sir: I received your letter stating that you did not feel disposed to pay $3,500 for my land.  *  *  The lowest I will take for it is $3,200.  That is what you offered last year.  If I can get one thousand dollars down and *five hundred* per year until the balance is paid, with interest and security on the money by mortgage, I have made up my mind to sell it.  If this meets your favor you can write and let me know."  [Signed by the defendant.]  This letter was received by the plaintiff about the 5th of February, 1868, and on the 8th of the same month he mailed an answer at Hudson, Wisconsin, addressed to the defendant at Darien, Connecticut, as follows: "Dear Sir: I received your letter of the 29th of January last, stating that you would take $3,200 for your land here, with one thousand dollars down, and the balance in yearly payments of five hundred dollars a year until the balance is paid, with interest, and secured by mortgage.  I will take the land at the price and terms above stated.  I have six hundred dollars in the First National Bank of Hudson, and will deposit the other four hundred to-morrow.  You can make out a deed and send it to the bank with instructions, and draw your money, and I will execute the mortgage and hand to them.  I suggest this method of making the transfer, as it saves time and expense.  *  *  P. S. I have already deposited the one thousand dollars."  [Signed by the plaintiff.]  The $1,000 was deposited in the bank as stated in said letter, and placed to the plaintiff's credit on the books of the bank; and the cashier of the bank notified defendant that said sum was deposited to be paid to him (defendant) by the bank on receipt of the title papers to said land.  On the 20th of February, 1868, the defendant, by letter, informed the plaintiff that he had received his letter

Matteson vs. Scofield.

stating he would give the defendant what he asked for the land in question, and that plaintiff had deposited the sum of $1,000 for the first payment, in the bank, subject to his (defendant's) order; that he (defendant) had made up his mind to come to Hudson and do the business himself, and thought he should be there in about two weeks from that time. The defendant came to Hudson in about five weeks from the date of this letter; thereupon plaintiff (by his agent) tendered to defendant $1,000 as the first payment for the land, and also notes for the balance in accordance with the terms of the letters above recited, and a mortgage of the land securing said notes; and at the same time plaintiff demanded a deed of the land, "which the defendant refused to deliver at that time;" and immediately thereupon the summons in this action was served.

The answer of the defendant does not allege any willingness to perform on his part, but avers that he had been misled as to the value of the land by false and fraudulent representations of the plaintiff, made while the latter was employed by him as an agent to make sale of the land. The printed case does not show that any evidence was offered to sustain these allegations of the answer, or that there was any finding in regard to them.

. The court held, 1. That plaintiff was entitled to the usual judgment that defendant perform specifically the agreement on his part. 2. That as defendant was a non-resident of this state, and out of the jurisdiction of the court, plaintiff was entitled to a judgment vesting in him all the right, title and interest which the defendant had in the land at the commencement of the action and filing of notice of *lis pendens* therein; plaintiff being required, before or at the time of the entry of said judgment, to deposit with the clerk of the court $1,000, and all other sums with interest from February 8, 1868, which might be due defendant

Wis. xxvii—85

by the terms of said agreement, with his note and mortgage for any sum of money not so due with interest from the same date.   3. That after obtaining the receipt of the clerk showing compliance with these conditions, plaintiff should have a judgment vesting in him the title of the defendant as aforesaid.

Judgment was afterwards entered, which recited, *inter alia,* that plaintiff had " obtained the receipt of said clerk required by said decision," and had " complied with the conditions of said decision," and that " said receipt had been read and filed ;" and thereupon declared that all the defendant's right, title and interest in the premises in controversy, at the time of the filing of the *lis pendens,* was thereby passed to and vested in the plaintiff. From this judgment the defendant appealed.

*O. F. Jones* and *S. F. White,* for appellant, contended that the letters between the parties did not show that the minds of the parties met, by an offer definitely made on the one part and an unqualified acceptance of that offer as made, on the other, and therefore failed to show a contract (6 Wend. 103, re-asserted by DENIO, J., in *Vassar v. Camp,* 1 Kern. 449) ; that defendant's first letter was not a direct offer to sell to plaintiff, but a general statement of what defendant was willing to take if he could get it, and concludes not by asking plaintiff to inform him whether he accepted, but by requesting him to state whether the terms proposed impressed him favorably.   But even if that letter was an offer, plaintiff's reply was not an unconditional acceptance.   No place of payment of the $1,000 being named, in law it was to be paid to defendant personally ; hence that proposition must have been met by such an acceptance as would have made plaintiff liable to pay defendant personally that sum. There was no such acceptance ; but a new proposition as to deposit of money by plaintiff in a strange bank, which defendant could draw, upon sending a deed with

Matteson vs. Scofield.

instructions to the same stranger. The defendant's offer did not contain any proposition to make a deed; therefore, if accepted as made, he could not be required to make a deed until the purchase money was fully paid. *Tyler v. Strang*, 21 Barb. 204. Nor could plaintiff claim possession under such contract, if not stipulating for possession. *Suffern v. Townsend*; 9 Johns. 35; *Cooper v. Stower*, id. 331, approved in *Kellogg v. Kellogg*, 6 Barb. 127. There being no agreement to convey the premises sold, until full payment, defendant cannot be presumed to have intended, by the mortgage mentioned in his letter, a mortgage of those premises. It required, therefore, further correspondence, further negotiations, and further assent on the part of defendant, before there could be a meeting of their minds either as to the payment or security. 3 Merivale, 446–51. 2. Counsel argued that the judgment could not properly contain any provision not embraced in the conclusions of law as found (*Loeschigh v. Addison*, 19 Abb. 169; 3 Rob. 331; R. S. ch. 132, sec. 32); and that there was nothing to warrant the court in passing title to the property, (1.) Because it was not found as a conclusion of law that defendant should *convey*, nor that plaintiff was *entitled to a conveyance* of the title. (2.) Because there should be an order to convey, and disobedience to such order, before such a judgment. The only authority there is now for passing title by judgment is sec. 15, ch. 129, R. S., which confers such authority only " when the court shall have ordered the deposit, delivery or conveyance of money or other property, and the order is disobeyed." The statute is in derogation of the common law and summary in its application, and must be strictly construed. 3. The entry of judgment was made dependent upon the plaintiff depositing with the clerk $1,000, and such *other* sums as might then be due to defendant by the terms of the agreement, and notes and mortgage for such sum as might not be due. There is no finding of what *other* sums

were due, nor what not due ; and nothing to indicate upon what property or what kind of property the mortgage should be given.   The clerk was required to judicially determine what the terms of the agreement were ; what was then due under it; what was not due ; what kind and how much property should be mortgaged ; and then to give  plaintiff a receipt certifying that determination.

*Henry C. Baker* and *Henry A. Wilson* (with *P. L. Spooner*, of counsel), for respondent.

COLE, J.   According to our view, the letter of the defendant, dated January 29th, 1868, contained an offer to sell his land on the terms therein specified.   This offer was unconditionally accepted by the plaintiff, as appears from his letter dated February 8th, 1868. These letters constituted a valid and binding agreement between the parties, which a court of equity will specifically perform.

It was insisted by the counsel for the defendant, that the correspondence did not show that the contract had been actually concluded and agreed upon in all its parts, but that it still rested to some extent upon further negotiation or correspondence.   The proposition made by the defendant was to sell his land for $3,200 ; $1,000 to be paid down, and $500 a year until the balance was paid, with interest ; the amount unpaid to be secured by a mortgage.   Now it is said, it is entirely undetermined by the parties upon what lands this mortgage was to be given.   But we think the very obvious intention of the parties was, that the lands sold were to be conveyed by deed to the purchaser, and that the latter was to execute a mortgage back on the same lands for the unpaid purchase money. Considering the nature of the transaction, it seems to us that there is no room to doubt that this was the expectation and intention of the parties.   In his letter accepting the proposition of the defendant, the plain-

tiff proposed or suggested that the business, in order to save time and expense, be transacted through the First National Bank of Hudson. He stated that he would deposit $1,000 with the bank, and that the defendant might make out a deed and send to the bank with instructions, and that he then would execute the mortgage and hand to them. The acceptance of the defendant's offer was not made dependent at all upon this method of doing the business. And it was the undoubted right of the defendant, upon the contract, to insist that the money should be paid to him at his residence in Connecticut, and that the business should be personally transacted there by the plaintiff. But he does not so insist, but replies that he has made up his mind to come out to Hudson and do the business himself. There is nothing, however, in all this which varies the terms of the contract entered into, or which in any way affects the right of the plaintiff to have it enforced in equity.

It is not claimed that there was any uncertainty in respect to the lands the parties were treating about; or that parol evidence was inadmissible to apply the agreement to the subject-matter. And as the correspondence set out in the complaint shows a valid and actually concluded contract for the sale of real estate, the plaintiff has the right to have the contract specifically executed. There are no essential terms of the contract doubtful. It is a plain proposition to sell upon specified conditions on the one hand, and an unequivocal acceptance of the proposition on the other.

It is objected that there is no order for a judgment for costs. We do not fully understand what is meant by this objection. The record shows that the court in its judgment adjudged that the plaintiff recover his costs against the defendant, amounting to $49.65.

Again, it is said there was nothing to warrant the court in passing title to the property to the plaintiff. The court found that the defendant was a non-resident,

and out of the jurisdiction of the court.    It is true, he had been served with process while temporarily within the jurisdiction of the court, had put in an answer, and contested the suit upon its merits.    But he was not a resident within the territorial jurisdiction of the court, so that it could compel him to perform his agreement and execute a deed.    Even if the court had not the right to pass the title to the land within its jurisdiction by virtue of the inherent powers vested in it as a court of equity, still the last clause of section 15, chap. 129, R. S., would seem to give it ample authority to "pass title to real estate by its judgment without conveyance."    This clause of the section is certainly a clear recognition of the power of a court of equity to pass title to real estate when essential to the complete exercise of its jurisdiction.

A still further objection is taken, that the entry of judgment was made dependent upon the plaintiff depositing with the clerk $1,000, and such other sums as might then be due to the defendant by the terms of the agreement, and his notes and mortgage for such sums as were not due.    This, it is said, was requiring the clerk to judicially determine matters which should be settled by the court.    But there is no pretense that the clerk has made any mistake in executing the directions of the court, or that the defendant has been in any way prejudiced by anything the clerk has done.

Upon the whole record we think the judgment of the circuit court is right, and must be affirmed.

*By the Court.*—Judgment affirmed.