## Seeherman et ux. v. Weiss et ux.

*Harold Rosenn,* for plaintiffs.
*Louis Shaffer,* for defendants.

PINOLA, J., August 28, 1953.—The question involved in this case is a narrow one: Does a wife have a dower or statutory interest in property purchased by her husband for another?

The facts agreed upon are as follows:

1. On July 1, 1953, defendants offered to buy from plaintiffs the following described premises situate in

the Fifth Ward of the Borough of Kingston, County of Luzerne and State of Pennsylvania:

"Beginning on the Northerly side of Westmoreland Avenue 435 feet in an Easterly direction from the Northeasterly corner of South Dorrance Street and Westmoreland Avenue; thence North 29 degrees 1 minute West, 160 feet to a corner; thence North 60 degrees 59 minutes East, 60 feet to a corner; thence South 29 degrees 1 minute East, 160 feet to a corner on Westmoreland Avenue; thence along Westmoreland Avenue, South 60 degrees 59 minutes West, 60 feet to the place of beginning.

"Being 15 feet from the Easterly side of Lot No. 16 and 45 feet from the Westerly side of Lot No. 15 as designated on the "Meadowland Plot" of Dorrance Realty Corporation, a map of which plot is recorded in the Recorder of Deeds' Office of Luzerne County in Map Book 2, page 120.

"Improved with a 1½ story frame and stone building."

2. At the time this offer was submitted by defendants to plaintiffs, defendants deposited the sum of $1,000 in cash as earnest money; and upon the execution and delivery of a good and marketable fee simple deed, free and clear of all liens and encumbrances, defendants were to pay the balance of the purchase price, to wit, $25,500.

3. The 15 feet from the easterly side of lot 16 was included in and was part of the premises conveyed by George J. Llewellyn, attorney, to Jacob Balchun by deed dated January 26, 1928, acknowledged February 7, 1928, and recorded February 8, 1928, in the Recorder of Deeds' Office in Luzerne County in Deed Book 664, page 597. Said deed was executed and acknowledged by George J. Llewellyn, attorney.

4. George J. Llewellyn, attorney, had acquired title to the premises so conveyed by him to Jacob Balchun

on January 26, 1928, by virtue of foreclosure proceedings instituted by Meyer Lander and Samuel Kornfeld, directed against Paul Delahunty and John R. Andreas on a bond dated April 15, 1925, filed in the Prothonotary's Office of Luzerne County at December term, 1927, no. 1488, in the real debt of $18,000, title to the premises having been taken at the time of the foreclosure sale in the name of George J. Llewellyn, attorney, on January 14, 1928, which deed was acknowledged on January 26, 1928, and recorded on February 2, 1928.

5. George J. Llewellyn died on September 30, 1944.

6. George J. Llewellyn acted as attorney for Meyer Lander and Samuel Kornfeld, mortgagees, in the foreclosure proceedings, as set forth in the files in the proceedings, which files are incorporated by reference thereto.

7. Attached (to the case stated), marked exhibits "A" and "B" and made a part (thereof), are the affidavits of Meyer Lander and Samuel Kornfeld, mortgagees aforesaid, to the effect that George J. Llewellyn was acting as trustee and attorney for the mortgagees in the purchase of, and that he had no beneficial interest in, the premises.

8. Mary E. Llewellyn, wife of George J. Llewellyn, did not join in the deed aforesaid to Jacob Balchun, nor did she at any time transfer or convey any interest which she may have or might have in the property, namely, 15 feet of the easterly side of lot 16 purchased by defendants as set forth in paragraph 1.

9. On April 21, 1925, Paul Delahunty and John R. Andreas entered into a contract with Jacob Balchun and Hazel Balchun, his wife, for the purchase by Jacob Balchun and Hazel Balchun, his wife, from Paul Delahunty and John R. Andreas of the aforesaid 37½ feet of the easterly side of lot 16 for the sum of $2,500, to apply upon which Jacob Balchun and Hazel Balchun,

his wife, paid the sum of $1,150, and the balance of $1,350 was to be payable within two years from that date in equal payments every six months with interest at the rate of six percent. That Jacob Balchun and Hazel Balchun, his wife, had, in every respect, complied with the terms of the agreement, yet notwithstanding that fact, although legal tender had been made of the aforesaid balance of $1,350 to Paul Delahunty and John R. Andreas, they had failed and refused to deliver to Jacob Balchun and Hazel Balchun, his wife, a good and sufficient warranty deed for the premises, all of which is more particularly set forth in the petition filed in the Court of Common Pleas of Luzerne County at December term, 1927, no. 1488, being the foreclosure proceedings aforsaid.

10. Since January 26, 1928, and until May 5, 1952, when Jacob Balchun and Hazel Balchun, his wife, conveyed the premises to Elmer J. Harris, attorney, the deed for which is recorded in the Recorder of Deeds' Office in Deed Book 1154, page 607, Jacob Balchun has kept and maintained said lot in a clean and healthful condition; he has cut and removed all the weeds therefrom and has paid all the taxes assessed against the lot.

11. Included among the property sold by the Sheriff of Luzerne County to George J. Llewellyn, attorney, as set forth in paragraph 4, were other lots which likewise had been previously sold by Paul Delahunty and John R. Andreas by contract of sale prior to the foreclosure proceedings, which were thereafter conveyed by George J. Llewellyn, attorney, by deeds which he had executed and delivered without the joinder of his wife, Mary E. Llewellyn.

12. At no time since the conveyance of the property to George J. Llewellyn, attorney, by the sheriff as aforesaid, and the subsequent conveyance by George J. Llewellyn, attorney, on January 14, 1928, has Mary E. Llewellyn, then wife of George J. Llewellyn, attorney,

ever made any claim or demand whatsoever for or against the 15 feet of the easterly side of lot 16.

13. Defendants have refused to complete the purchase of the property described in paragraph 1 without the execution and delivery of a quitclaim deed by Mary E. Llewellyn, widow of George J. Llewellyn, attorney, deceased.

14. Plaintiffs contend that George J. Llewellyn had acquired title to the aforesaid 15 feet of the easterly side of lot 16 as trustee and had taken title thereto in his name as attorney, and that the execution and delivery of the aforesaid deed by George J. Llewellyn, attorney, to Jacob Balchun on January 26, 1928, as set forth in paragraph 3, conveyed to Jacob Balchun all of the right, title and interest which George J. Llewellyn, attorney, has acquired, and that Mary E. Llewellyn, widow, had no statutory interest in lieu of dower nor any interest whatsoever therein.

### Discussion

The grantee, now deceased, was at the time of the conveyance to him a practicing attorney of our bar. He took title to the property as "attorney," thus giving notice to the world that he was not actual owner of it.

Since the purchase was made at the foreclosure proceedings instituted by him in behalf of Meyer Lander and Samuel Kornfeld, mortgagees, it is presumed that they are the persons for whom he took and held the title. The sworn statements of these persons to that effect are attached to the pleading.

Defendants refuse to complete the purchase of the property described because the wife of George J. Llewellyn did not join in the conveyance from him to Jacob Balchun. They are fearful that she has an outstanding interest in the property.

Such fear is, in our opinion, groundless. In 28 C. J. S. 96, §33, it is stated that:

"Where land is purchased by one person in his name

for the benefit of another, with the latter's money, the wife of the former has no dower therein."

In Detwiler et al. v. Capone et ux., 357 Pa. 495, a husband had executed a lease prior to his coverture which contained an option to purchase. Although notified of the exercise of the option, the husband contended that his wife could not be compelled to a release her dower in the land. The court declared (p. 498) :

"The rule is that when property is encumbered by a husband prior to his marriage, the woman who becomes his wife acquires no inchoate right of dower in it (or what is referred to as 'a widow's share in lieu of dower' since the enactment of the Intestate Act of June 7, 1917, P. L. 429, sec. 3, 20 PS 31) by virtue of her marital status."

Continuing, Chief Justice Maxey said (p. 499) :

"In such case the husband is a trustee of the legal title for the benefit of the purchaser, and as such the wife cannot claim dower against the vendee."

Mary E. Llewellyn is not entitled to the statutory equivalent of dower in this property because her husband was never seized thereof, i.e., he never had "the force of possession under some title or right to hold the title."

As stated in Thompson on Real Property, vol. 2, §876, p. 594:

"Seisin of the husband of an estate of inheritance is essential to the wife's right to dower, and this seisin must be one beneficial to the husband himself and not a mere naked seisin for the benefit of another. The word 'seisin' as here used means a seisin accompanied by a beneficial interest; and so, where the husband's holding was merely that of a trustee, he had no such interest as would entitle the wife to dower. . . . Mere naked possession by the husband is not seisin in the sense that the wife can claim dower on account of it."

Stiteler v. Younkin, 75 D. & C. 112; Schein et ux. v. Brasler et ux., 62 D. & C. 165; Oppenlander v. Searway, 63 Montg. 39, and Rush v. York Garden Homes, 62 Montg. 38, support this proposition.

We, therefore, reach the following

### Conclusion of Law

Mary E. Llewellyn, wife of George J. Llewellyn, attorney, had no statutory interest in lieu of dower nor any interest in the described premises at the time of their conveyance to Jacob Balchun on January 26, 1928.

Accordingly, we enter the following

### Order

Now, August 28, 1953, at 1:30 p. m., judgment is entered for plaintiffs and against defendants.