IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Emelyn Matos and Samuel Cruz, : 
                  Appellants : 
          : 
         v. : No. 534 C.D. 2019
          : Argued: December 12, 2019
Berks County Tax Claim Bureau : 
and Alba Castillo : 

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
               HONORABLE P. KEVIN BROBSON, Judge
               HONORABLE ANNE E. COVEY, Judge

OPINION
BY PRESIDENT JUDGE LEAVITT             FILED: April 13, 2020

Emelyn Matos and Samuel Cruz (Tenants) appeal an order of the Court of Common Pleas of Berks County (trial court) dismissing their exceptions to the upset tax sale of a residential property. Tenants challenged the sale as not complying with the strict notice requirements of the Real Estate Tax Sale Law (Tax Sale Law).[1] They asserted standing to challenge the tax sale on the basis of their lease agreement that included an option to purchase; as of the tax sale date Tenants had paid $18,000 toward the purchase price. The trial court held that Tenants lacked standing to challenge the tax sale because their lease agreement expired before the tax sale. We vacate and remand.

The property at issue in this appeal is a residence located at 111 West Oley Street in Reading, Pennsylvania, that was sold at an upset sale on September 21, 2018. On November 9, 2018, Tenants filed "Exceptions/Objections to Tax Sale" asking the trial court to set aside the tax sale. Reproduced Record at 1a (R.R. __). Tenants averred that they had entered into a "rent-to-own lease agreement" with Rig

---

[1] Act of July 7, 1947, P.L. 1368, *as amended*, 72 P.S. §§5860.101 – 5860.803.

Home Solutions, whereby they paid $850 per month to rent the property and an additional $250 per month toward the purchase of the property. R.R. 2a. Tenants further averred that they paid Rig Home Solutions $10,000 as a deposit for the property. Tenants attached to their petition a copy of the lease agreement and a copy of a check dated March 22, 2016, made payable to Rig Home Solutions in the amount of $7,000 for a "down payment." R.R. 11a. Tenants asserted that the Tax Claim Bureau failed to comply with the notice requirements in Sections 601(a)(3), 602(a) and 602(e)(1) of the Tax Sale Law, 72 P.S. §§5860.601(a)(3) (written notice by personal service on owner-occupant), 5860.602(a) (published notice), 5860.602(e)(1) (notice by certified mail to owner, return receipt requested).

On December 20, 2018, the trial court convened a status conference. Alba Castillo (Purchaser), who purchased the property at the tax sale, made an oral motion to dismiss Tenants' action for lack of standing. Purchaser pointed out that the lease agreement had expired on March 30, 2018, nearly six months before the tax sale. Tenants' counsel rejoined that the lease agreement incorporated by reference an option agreement. He acknowledged Tenants lacked a copy of the option, but they were trying to obtain it.[2] Tenants' counsel acknowledged that the lease agreement stated that the document could not be recorded. The trial court reserved judgment until Tenants' counsel could file a brief, which he did on December 27, 2018.

At a subsequent status conference on March 18, 2019, Tenants' counsel informed the trial court that his efforts to obtain a copy of the option agreement from

---

[2] On December 19, 2018, Tenants filed a notice of intent to serve subpoena on Rig Home Solutions to secure a copy of the option agreement.

Rig Home Solutions were to date unsuccessful.[3]  Counsel stated that he had scheduled a deposition of the record owners of the property, Carmello and Ivonne Bonet, for March 27, 2019, to question them about their relationship with Rig Home Solutions and their knowledge of the purchase option agreement.  The trial court granted Purchaser's motion to dismiss on the ground that Tenants lacked standing to challenge the tax sale.  Tenants appealed to this Court.

In its opinion filed pursuant to Pa. R.A.P. 1925(a), the trial court analogized its order dismissing Tenants' action to an order granting summary judgment to Purchaser.  The trial court explained that Tenants lacked standing to object to the tax sale because the lease agreement on which they relied to assert an interest in the property had expired by its own terms nearly six months before the tax sale.  Any interest Tenants had expired with the agreement.  Concluding that Tenants lacked standing and that there were no issues of material fact, the trial court granted Purchaser's motion to dismiss.

On appeal,[4] Tenants argue that the trial court erred in holding that they lacked standing to object to the tax sale.  They also argue that the trial court erred in dismissing their objections without a hearing and before discovery was complete, which denied them due process of law.

Tenants first argue that the trial court erred in dismissing their exceptions to the tax sale for lack of standing.  Section 607 of the Tax Sale Law, 72

---

[3] Counsel stated that he "sent the constable to a couple of addresses, and it's come back with no service on them for the subpoena I issued to them [for] the agreement.  I have contacted their number, and every time it's just a run around."  Notes of Testimony, March 18, 2019, at 3; R.R. 77a.

[4] "In tax sale cases, our review is limited to determining whether the trial court abused its discretion, rendered a decision without supporting evidence, or clearly erred as a matter of law." *Husak v. Fayette County Tax Claim Bureau*, 61 A.3d 302, 306 n.6 (Pa. Cmwlth. 2013).

3

P.S. §5860.607, imposes requirements upon a tax claim bureau that it must follow after a tax sale. It requires the tax claim bureau, *inter alia*, to publish notice to the public that an owner or lien creditor has 30 days to object to a tax sale. Section 607(b) states:

> (b) *The bureau shall*, at the expense of the county, within ten (10) days after confirmation nisi of the consolidated return, *publish a general notice once in a newspaper of general circulation* published in the county, and in the legal journal, if any, designated by rules of court for the publication of legal notices, stating (1) that the consolidated return of the bureau with respect to any such sale for taxes has been presented to the court, (2) giving the date of confirmation nisi and (3) *that objections or exceptions thereto may be filed by any owner or lien creditor* within thirty (30) days after the court has made a confirmation nisi of the consolidated return or that the return will be confirmed absolutely.

72 P.S. §5860.607(b) (emphasis added). Section 102 of the Tax Sale Law defines "owner" as follows:

> *[T]he person in whose name the property is last registered*, if registered according to law, or, if not registered according to law, the person whose name last appears as an owner of record on any deed or instrument of conveyance recorded in the county office designated for recording and in all other cases[5] means any person in open, peaceable and notorious possession of the property, as apparent owner or owners thereof, or the reputed owner or owners thereof, in the neighborhood of such property; as to property having been turned over to the bureau under Article VII by any county, "owner" shall mean the county.

---

[5] In this definition, the phrase "and in all other cases" includes a county where deed registry laws do not apply. *Shipley v. Tax Claim Bureau of Delaware County*, 74 A.3d 1101, 1105 n.5 (Pa. Cmwlth. 2013). This language does not apply to Berks County.

4

72 P.S. §5860.102 (emphasis added). Tenants acknowledge that they do not meet the definition of "owner" set forth in Section 102 of the Tax Sale Law. They argue, however, that Pennsylvania courts have not applied this definition of "owner" to the question of what persons have standing to object to a tax sale. We agree with Tenants.

In *Shipley*, 74 A.3d 1101, the trial court held that Rochelle Shipley lacked standing to challenge the judicial tax sale of the subject property, which her husband had purchased during their marriage and deeded in his name. On appeal, this Court observed that "whether Mrs. Shipley had standing, as an equitable owner, to file the Petition to Set Aside pursuant to Section 607 of the [Tax Sale] Law is a question separate from whether she was entitled to notice." *Id*. at 1105. We concluded that she had a legally recognized, equitable interest under the Divorce Code[6] because the property was acquired during the marriage. As further indicia of Mrs. Shipley's interest, we noted that the property had been purchased with joint funds, and she had paid taxes, contributed to maintenance, and operated a business on the property. Thus, even though she was not entitled to notice of the tax sale, "pursuant to Section 607 of the [Tax Sale] Law and this Court's decision in *Husak* [61 A.3d 302], she had standing to challenge the judicial tax sale of the [p]roperty." *Shipley,* 74 A.3d at 1107.

*Husak* is also instructive. In that case, the owners acquired the subject property by quitclaim deed, which they did not record until after the upset sale. The purchasers contended that the owners were not "owners" under Section 102 of the Tax Sale Law and, therefore, could not file objections. The trial court, and this Court, disagreed; we held that the owners "acquired, at the very minimum, equitable

---

[6] 23 Pa. C.S. §§3101-3904.

title, a legally recognized interest in the subject property" and "were clearly aggrieved for purposes of standing to challenge the tax sale." *Husak,* 61 A.3d at 310.

Purchaser construes the statutory directive to the tax claim bureau to publish notice in a newspaper that an "owner" has 30 days to object as having a reach far beyond tax claim bureaus. Purchaser reads Section 607(b) as meaning that only an owner has 30 days to file an objection to a tax sale; all other persons are prohibited from pursuing exceptions. Had the legislature intended that only a defined "owner" has standing to object to a tax sale, it would have so stated. Section 607(b) does not address the subject of who has standing to object to a tax sale. Purchaser's construction of Section 607(b) has been rejected in *Shipley* and *Husak*, and those cases are dispositive here.

Under the above precedent, a legally recognized equitable interest confers standing upon an individual to challenge a tax sale, even if that individual was not entitled to notice of the sale under the Tax Sale Law.[7] *See*, *e.g.*, Sections 601(a)(3) and 602(e)(1) of the Tax Sale Law, 72 P.S. §§5860.601(a)(3),

---

[7] Purchaser's reliance on *Appeal of Yardley*, 646 A.2d 751 (Pa. Cmwlth. 1994), is unpersuasive. In that case, real estate owned by a corporation was sold at an upset tax sale to one of its 50% shareholders. The other 50% shareholder, Yardley, filed exceptions to the tax sale, asserting that her co-owner breached his fiduciary duty to the corporation and seeking to compel the tax claim bureau to apply the tax sale proceeds to the corporation's tax bill. This Court held that Yardley lacked standing under the Tax Sale Law because "by her own admission, [she] was not an owner, nor did she claim she was a lien creditor of the property assessed in the name of [the corporation] and sold at the tax sale." *Id*. at 755. Purchaser contends that because Tenants acknowledge they do not qualify as "owners" under the Tax Sale Law, they have no greater interest in the property than did Yardley. *Yardley* is inapposite because the interests of Tenants and Yardley are different. *Yardley* stands for the proposition that a corporation's owner does not have a personal equitable interest in the corporation's real estate for purposes of standing to challenge a tax sale under Section 607 of the Tax Sale Law. Pennsylvania case law recognizes such an interest in the holder of an option to purchase real estate.

6

5860.602(e)(1). Thus, the salient issue in the case *sub judice* is whether an option to purchase leased property creates an equitable interest in a tenant who holds such an option.

Pennsylvania courts have long held that an option to purchase land conveys a substantial and legally recognized equitable interest in the optionee. For example, in *Detwiler v. Capone*, 55 A.2d 380 (Pa. 1947), the plaintiffs entered into a written lease of property with an option to purchase. When the owner refused to comply with their requests to exercise the option, they commenced an action in equity against the owner seeking specific performance of the option agreement and praying that any claim of right, title or interest by the owner's wife be extinguished. The trial court sustained the preliminary objections of the owner and his wife. In reversing the decree, which required an analysis of the interest the owner's wife acquired through marriage, our Supreme Court observed:

> An option to purchase is analogous to a contract for the sale of land; it is in nature an encumbrance on the land pledged. In such case the [optionor] is a trustee of the legal title for the benefit of the purchaser…. Equity regards the person bound to convey as having done what he should have done, i.e. made the conveyance, and treats him as trustee for the optionee. Where an option is exercised the title of the optionee relates back to the date of the option and his interest is regarded as real estate of that time[.]

*Id*. at 383 (internal quotation marks and citations omitted). *See also Guido v. Township of Sandy*, 880 A.2d 1220 (Pa. 2005) (optionee in lease-to-purchase agreement had a property interest sufficient to support a division-in-fact of the property, which occurred when optionee exercised the option and related back to date of option).

7

Based on the above precedent, Tenants assert a substantial, immediate and direct interest in the property if, as they claim, they hold an option to purchase the property and have paid $18,000 toward its purchase. There is partial evidence of record in the form of a $7,000 check made payable to Rig Home Solutions for a "down payment." R.R. 11a. The trial court erred by focusing on the expiration of the lease agreement, which did not extinguish Tenants' equitable interest in the property. The equitable interest created by the option agreement will relate back to the date of the option. *See, e.g.*, *Shaffer v. Flick*, 520 A.2d 50 (Pa. Super. 1987) (tenants of farm property with option to buy were entitled to proceeds of fire insurance policy with extended coverage, notwithstanding fact that option was not exercised until after loss occurred, because transfer of equitable title related back to date of option contract).

This brings us to Tenants' second issue, *i.e.*, whether the trial court erred in dismissing their objections for lack of standing while they were still conducting discovery on that issue. At the time the trial court dismissed their exceptions, there was an outstanding subpoena for the production of the option agreement and a deposition of the owners had been scheduled to ascertain their relationship to Rig Home Solutions and knowledge of Tenants' option agreement. Tenants assert that the existence and terms of the option agreement are factual issues related to their standing; therefore, they were entitled to a hearing to develop a record on these issues. Finally, Tenants argue that the trial court erred in denying their exceptions on summary judgment grounds because the Rules of Civil Procedure are inapplicable in tax sale proceedings. *See Battisti v. Tax Claim Bureau of Beaver County*, 76 A.3d 111 (Pa. Cmwlth. 2013).

Beginning with Tenants' last point, we discern no error in the trial court's analogy to summary judgment principles to explain its analysis. Nevertheless, the trial court erred in granting Purchaser's motion to dismiss on the ground that Tenants lacked standing because the lease agreement had expired and no issues of material fact remained. As explained above, the equitable interest Tenants have by virtue of the option agreement relates back to the date of the option. The expiration of the lease agreement is irrelevant. The existence and terms of the option agreement and the amount paid by Tenants toward purchasing the property are all factual issues that are material to their standing. The trial court should have let discovery proceed, especially since a deposition of the owners was scheduled to occur within ten days of the status conference. The court erred by dismissing Tenants' exceptions "on the pleadings."

For all of these reasons, we vacate the order of the trial court and remand for further proceedings on Tenants' exceptions to the upset tax sale.

_____
Mary Hannah Leavitt, President Judge

9

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Emelyn Matos and Samuel Cruz,  :
      Appellants   :
           :
    v.      :  No. 534 C.D. 2019
           :
Berks County Tax Claim Bureau :
and Alba Castillo     :

# **O R D E R**

AND NOW this 13th day of April, 2020 the order of the Court of Common Pleas of Berks County filed April 2, 2019, is VACATED and the above-captioned matter is REMANDED for further proceedings consistent with the attached opinion.

   Jurisdiction is relinquished.


_____
Mary Hannah Leavitt, President Judge